**SIGNED THIS: July 30, 2007**

_____
**THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE: | ) |
| | ) |
| JOHN R. EICHWEDEL | )    No. 06-81327 |
| | ) |
| Debtor. | ) |

**O P I N I O N**

This matter is before the Court on the Objection filed by the Debtor, John R. Eichwedel (DEBTOR), to Claim No. 5 filed by the Illinois Department of Healthcare and Family Services/MRU (IDHFS) for a child support arrearage plus interest on the arrearage. The issue concerns the allowability of the interest.

**FINDINGS OF FACT**

1. The DEBTOR is divorced from Laura Eichwedel.

2. The DEBTOR and Laura have a daughter, Amy, born December 24, 1982.

3. Amy turned 18 years of age on December 24, 2000.

4. The DEBTOR was ordered to pay child support to Laura, for the benefit of Amy, in the amount of $42 per week beginning February 28, 1986.

5. The DEBTOR filed this Chapter 13 case on August 24, 2006.

6. The DEBTOR scheduled Laura as holding a priority claim for unpaid child support in the amount of $5,000 and filed a Plan proposing to pay that amount, without interest, to Laura, through the Plan.

7. The DEBTOR'S Chapter 13 Plan was confirmed without objection on October 16, 2006.[1]

8. On November 20, 2006, IDHFS timely filed a proof of claim, docketed as Claim No. 5-1.

9. Claim No. 5-1 asserts that the balance of child support owed Laura by the DEBTOR as of the petition date of August 24, 2006, is $13,217.16 and that this amount is entitled to priority as a domestic support obligation under Section 507(a)(1)(A) or (B).

10. Attached to Claim No. 5-1 is a Support Calculation Worksheet asserting that (i) the total principal amount of accrued support is $32,508, (ii) the total amount of interest charged as of July 31, 2006, is $7,930.16, (iii) the total of payments received is $27,221, (iv) the balance due is $13,217.16.[2]

11. The Worksheet also indicates that Laura will receive the funds and that interest will continue to accrue on the unpaid support until paid in full.

12. The Illinois Department of Public Aid, Division of Child Support Enforcement, sent four (4) written communications to the DEBTOR, once per year, in 2003, 2004, 2005 and 2006. Each writing is entitled "Notice of Intent to Pursue Collection Remedies" and demands payment of past due child support in the following amounts:

| | |
|---|---|
| 2003 | $6,475.87 |
| 2004 | 6,000.87 |
| 2005 | 5,627.38 |
| 2006 | 5,568.56 |

The notices make no mention of interest.

---

[1] Confirmation of the Plan does not preclude determination of the amount of Laura's priority claim. *See Matter of Escobedo,* 28 F.3d 34 (7th Cir. 1994).

[2] The first missed support payment shown is for February, 1986. No interest is charged until May, 1987.

**ARGUMENTS OF PARTIES**

The DEBTOR objects to the claim filed by IDHFS, contending that Illinois law did not provide for interest on delinquent child support until January 1, 2000, when 750 ILCS 5/505(b) was amended to expressly provide for the accrual of interest on overdue support payments.  The DEBTOR also argues that the accrual of interest terminated on December 24, 2000, when Amy turned 18 years of age.  The DEBTOR cites *In re Marriage of Steinberg,* 302 Ill.App.3d 845, 706 N.E.2d 895 (Ill.App. 1 Dist. 1998), for the proposition that prior to January 1, 2000, interest on unpaid child support could or could not be awarded by the circuit court that entered the support order, in its discretion.  Since the circuit court that ordered him to pay support of $42 per week did not mention interest in the order, the DEBTOR maintains that the court thus exercised its discretion not to award interest, and that the parties are bound by that determination.  In the alternative, the DEBTOR also argues that the State of Illinois waived any claim to interest by omitting it in the four notices sent by the Department of Public Aid.

IDHFS frames the issue as whether interest on unpaid child support is mandatory from May 1, 1987, or only from January 1, 2000.  IDHFS relies upon the amendment to 750 ILCS 5/505(d) that became effective May 1, 1987, providing that an order for child support to be paid in periodic payments "shall be deemed to be a series of judgments . . . deemed entered as of the date the corresponding payment or installment becomes due . . ." and that "[e]ach such judgment shall have the full force, effect and attributes of any other judgment . . . ."  Although this provision does not specifically mention interest, IDHFS argues that one of the attributes of a judgment is that it draws interest at 9% per annum under 735

3

ILCS 5/2-1303. IDHFS also relies upon an amendment to 735 ILCS 5/12-109, which also became effective May 1, 1987, addressing judgments arising by operation of law from child support orders, and providing that every such judgment "shall bear interest as provided in Section 2-1303 commencing 30 days from the effective date of each such judgment." IDHFS characterizes the 2000 amendment to 750 ILCS 5/505(b) as a mere clarification of, not a change to, existing law.

## **ANALYSIS**

The parties discuss several cases beginning with *Finley v. Finley,* 81 Ill.2d 317, 410 N.E.2d 12 (1980), where the Illinois Supreme Court affirmed as within the sound discretion of the divorce court, an award of interest on unpaid periodic child support payments, rejecting the position that interest was mandatory. Although *Finley* is not dispositive of the issue before this Court, it does serve to negate the DEBTOR'S argument that because the divorce court did not award interest in the initial child support order, it cannot be awarded at a later point in time on the unpaid periodic payments. This is exactly what happened in *Finley*, where the ex-husband paid only part of the support ordered. When the payee ex-wife went back into court to compel him to pay the balance, the court awarded interest on the unpaid amounts in the exercise of its discretion at that later point in time. It is not necessary for a divorce court to anticipate a default by the payor and include an award of anticipatory interest in the original support order.

As indicated above, the statutory law changed significantly after the *Finley* opinion was issued. One of the changes was addressed in *Steinberg, supra,* where the trial court determined that an award of interest on unpaid child support is mandatory pursuant to

4

Section 505(d) of the Illinois Marriage and Dissolution of Marriage Act. Reversing the trial court, the First District Appellate Court reasoned that interest on a judgment is discretionary in chancery matters, that *Finley* posited that dissolution judgments should be treated like judgments in chancery proceedings, and that Section 505(d) was not meant to change the discretionary nature of interest on child support judgments. 302 Ill.App.3d at 855-56.

Next, in *Burwell v. Burwell,* 324 Ill.App.3d 206, 753 N.E.2d 1259 (Ill.App. 4 Dist. 2001), the Fourth District Appellate Court reversed the trial court's denial of interest on unpaid child support. Consistent with *Steinberg,* the trial court had ruled that the award of interest was discretionary. Contrary to *Steinberg,* the appellate court reasoned that the 1987 amendments to Section 505 of the Marriage Act and Section 12-109 of the Code of Civil Procedure effectively abrogated *Finley* and made interest mandatory. The *Burwell* court noted that in *Steinberg* neither the court nor the parties considered Section 12-109.

The issue was then addressed by the Second District Appellate Court in *In re Marriage of Thompson,* 357 Ill.App.3d 854, 829 N.E.2d 419 (Ill.App. 2 Dist. 2005). After reviewing the statutes and conflicting authority, the court noted that the issue had been resolved by the amendment to Section 505(b) of the Marriage Act that became effective January 1, 2000, that makes interest mandatory on every support obligation that is unpaid for 30 days or more. 750 ILCS 5/505(b). The court saw no need to determine whether interest became mandatory in 1987, since it affirmed the award of interest as within the trial court's discretion.

The Illinois Supreme Court has not yet addressed the issue. After careful consideration of the applicable statutory provisions and appellate court decisions, this

5

Court is of the opinion that the Illinois Supreme Court would follow the reasoning of the majority opinion in *Burwell.* The 1987 amendment to Section 505 of the Marriage Act and Section 12-109 of the Code of Civil Procedure were part of the same statute, P.A. 85-2, and both amendments went into effect on May 1, 1987. Statutes *in pari materia* should be construed together, especially where the statutes were passed the same day and are to take effect the same day. *People ex rel. Vuagniaux v. City of Edwardsville,* 284 Ill.App.3d 407, 413, 672 N.E.2d 40 (Ill.App. 5 Dist. 1996).

Effective May 1, 1987, Section 505(d) deems every child support order for periodic payments to be a series of judgments that arise by operation of law and that have all of the attributes of other judgments. Also effective May 1, 1987, Section 12-109 expressly states that "every judgment arising by operation of law from a child support order *shall bear interest* as provided in Section 2-1303 . . . ." (Emphasis added). Section 2-1303 sets the interest rate on judgments at 9% per annum. These provisions clearly and unambiguously indicate that interest became mandatory, as of May 1, 1987, on all periodic payments of child support.

With respect to the DEBTOR'S waiver argument, "waiver" is the voluntary relinquishment of a known right. *Hill v. Cowan,* 202 Ill.2d 151, 158, 781 N.E.2d 1065 (2002). Waiver can arise either expressly or by conduct inconsistent with an intent to enforce that right. *Ciers v. O.L. Schmidt Barge Lines, Inc.,* 285 Ill.App.3d 1046, 1050, 675 N.E.2d 210 (Ill.App. 1 Dist. 1996). The party claiming an implied waiver has the burden of proving a clear, unequivocal and decisive act by the other party manifesting an intention to waive its rights. *In re Nitz,* 317 Ill.App.3d 119, 130, 739 N.E.2d 93, 103 (Ill.App. 2 Dist. 2000).

The four notices sent to the DEBTOR by the Department of Public Aid, each closely

6

following the same format, state the amount of past due child support as of August 31 of each year, defined as "the amount of payments which remain unpaid and includes any unpaid amounts set by the court or IDPA." Each notice then states an intent to collect that amount through offsets against tax refunds. Each notice goes on to threaten various other actions unless payment of the stated amount is received by December 31 of that year.

In the Court's view, these notices do not constitute a clear, unequivocal and decisive act that manifests an intention to waive any claim to interest. The notices do not indicate that payment of the stated amount will constitute full satisfaction of all sums due. Instead, the stated amount, as defined, is limited to the amount of the ordered payments that remain unpaid. As indicated above, the DEBTOR'S child support order does not include anticipatory interest. Moreover, the notices are boilerplate forms that are not signed by an individual – the letterhead indicates they were generated by the "Data Gathering Unit" of the Division of Child Support Enforcement of the Illinois Department of Public Aid. The notices do not purport to be a settlement proposal or offer of compromise and do not suggest or imply that if payment of the stated amount is received by the stated date, the Department will waive, release or forego claims for any other amounts. Under these circumstances, the failure to mention interest in the notices does not effect a waiver of the right to collect it.

The DEBTOR'S argument that the accrual of interest stops when the minor child reaches the age of 18 must also be rejected. Although the support obligation itself may terminate upon that event, interest is compensation for the time value of money, and continues to accrue on the unpaid principal balance until paid in full.

The DEBTOR did not challenge the method of calculating interest used by IDHFS.

7

Therefore, the Court accepts that calculation. Claim No. 5-1 should be allowed as filed in the amount of $13,217.16. This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###